IN THE UNITED STATE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYRONE R. HAMMONS, individually and on behalf of those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JUSTIN JONES, Director of Oklahoma Department of Corrections and or successors, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 00-CV-0143-CVE-SAJ |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner appearing *pro se*. By Order filed November 30, 2001 (Dkt. # 30), the Court granted Defendant's motion for summary judgment. After the Court denied his motion to alter or amend judgment (Dkt. # 46), Plaintiff proceeded with his appeal to the Tenth Circuit Court of Appeals. By Order filed November 13, 2003 (Dkt. # 52, Hammons v. Saffle, 348 F.3d 1250 (10th Cir. 2003)), the Tenth Circuit affirmed this Court's Order granting summary judgment to Defendant on the First Amendment and qualified immunity issues. However, the Tenth Circuit remanded the case to this court for consideration of a claim first raised by Plaintiff on appeal. Specifically, this Court has been directed to determine whether Plaintiff has stated a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. See id.

By Order filed December 11, 2003 (Dkt. # 53), the Court directed Plaintiff to file a brief addressing the applicability of the RLUIPA to his claims as asserted in his *pro se* complaint. On December 22, 2003, counsel entered an appearance (Dkt. # 56) on behalf of Plaintiff. Plaintiff filed

his response to the Court's Order on February 23, 2004 (Dkt. # 59). Defendant filed a response (Dkt. # 63). Plaintiff filed a reply (Dkt. # 68). For the reasons discussed below, the Court finds that Plaintiff's *pro se* complaint states a claim under RLUIPA. Defendant shall be afforded the opportunity to file a brief addressing his defenses to the claim.

As a preliminary matter, the Court shall address Defendant's Motion to Substitute Party and Brief in Support (Dkt. # 62). Defendant seeks to substitute the current Director of the Oklahoma Department of Corrections ("DOC")[1] as Defendant in place of James Saffle, the former Director. Defendant asserts that since the remand is limited only to a claim for injunctive relief, substitution is appropriate pursuant to Fed. R. Civ. P. 25(d)(1). Plaintiff objects to the requested relief, arguing that the remand Order did not limit the relief sought to only injunctive relief. See Dkt. # 65.

In its Order remanding for further proceedings under the RLUIPA, the Tenth Circuit stated that "[o]n appeal, Hammons seeks injunctive relief under RLUIPA and qualified immunity applies only to claims for damages." Hammons, 348 F.3d at 1258 n.1 (citations omitted). The Court finds that because Plaintiff sought only injunctive relief on appeal, the only relief to be considered by this Court on remand is injunctive relief. In addition, the RLUIPA provides that a person may assert a violation of the statute "in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). Courts interpreting this statutory language have concluded that it permits cases against a governmental entity, but not against an individual officer, except in his or her official capacity. See Boles v. Neet, 402 F. Supp. 2d 1237, 1240 (D. Colo. 2005) (citing Hale O Kaula Church v. Maui Planning Com'n., 229 F. Supp. 2d 1056, 1067 (D. Haw. 2002) ("RLUIPA provides

---

[1] When Defendant filed the motion to substitute, Ron Ward was the Director of the Oklahoma Department of Corrections. Since that time, Justin Jones has become Director.

a cause of action against 'governments' and does not appear to allow causes of action against individuals."); Guru Nanak Sikh Society of Yuba City v. Sutter, 326 F. Supp. 2d 1128, 1136 (E.D. Cal. 2003) (finding that the term "government" includes an official of the entity, and therefore permits suit against the official at least in his or her official capacity); Rowe v. Davis, 373 F. Supp. 2d 822, 828 (N.D. Ind. 2005) (RLUIPA claim may proceed against correctional officer or his successor in an official capacity basis)). Moreover, courts examining the issue of "appropriate relief" under RLUIPA have determined that claims for damages are precluded or uncertain. See Boles, 402 F. Supp. 2d at 1241 (citing Farrow v. Stanley, 2005 WL 2671541 at *11 n. 13 (D.N.H. Oct. 20, 2005) (unpublished) (finding that "RLUIPA authorizes 'appropriate relief against a government' . . . There is substantial uncertainty, however, as to whether this language even provides a right to money damages")). Based on the foregoing, the Court finds that relief in this remanded action is limited to injunctive relief against the Director of the Oklahoma Department of Corrections in his official capacity. Accordingly, substitution is appropriate and Defendant's motion shall be granted. Justin Jones, the current Director of the Oklahoma Department of Corrections, shall be substituted as Defendant in place of James Saffle, former Director.

### *Claims under the RLUIPA*

Under section 3 of the RLUIPA, a prison is forbidden from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless [it] demonstrates that imposition of the burden on that person ... (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise to "include[ ] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Section 3 of RLUIPA

"protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 125 S. Ct. 2113, 2122 (2005) (holding that section 3 of RLUIPA did not violate Establishment Clause). The RLUIPA creates a higher standard of review for free exercise claims than that applicable to constitutional free exercise claims. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 986 (8th Cir. 2004). "Requiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." City of Boerne v. Flores, 521 U.S. 507, 545 (1997). Therefore the strict level of scrutiny of the RLUIPA affords inmates more protection against religious infringement by correctional facilities' regulations than the rational basis analysis under the First Amendment. Compare id. with O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

The plaintiff bears the initial burden of demonstrating that the prohibited activity is a religious exercise and that the defendant substantially burdened that exercise. See 42 U.S.C. § 2000cc-1; see also Spratt v. Wall, 2005 WL 3434739 (D.R.I. Nov. 21, 2005) (setting forth analytical framework for analysis of claim under section 3 of RLUIPA). In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court declared the Religious Freedom Restoration Act ("RFRA"), see 42 U.S.C. § 2000bb, unconstitutional as applied to the states. In order to fall within the meaning of "religious exercise" under RFRA, the religious exercise had to be a central tenet of the religion. See Weir v. Nix, 114 F.3d 817, 820 (8th Cir.1997); Werner v. Cotter, 49 F.3d 1476, 1480 (10th Cir.1995); Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir.1995). In response to Flores, Congress enacted the RLUIPA. Among the changes, Congress eliminated the "central tenet" requirement and broadly defined "religious exercise" to "include[ ] any exercise of religion whether or not compelled

by, or central to, a system of religious belief." See 42 U.S.C. § 2000cc-5(7)(A). With such a broad definition, the Court finds that, in this case, Plaintiff's request for prayer oils for use during his daily prayers qualifies as a religious exercise within the meaning of RLUIPA.

Next, plaintiff must demonstrate that his religious exercise was substantially burdened. Spratt, 2005 WL 3434739 at *3-4. "Substantial burden" is not defined in the RLUIPA, see 42 U.S.C. § 2000cc-5. According to the Tenth Circuit Court of Appeals,[2] "RLUIPA's legislative history reveals that 'substantial burden' is to be interpreted by reference to the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq.*, and First Amendment jurisprudence." Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 794-95 (10th Cir. 2005) (citations omitted). The congressional intent behind the RLUIPA was not to create a new standard for "substantial burden." Rather, the RLUIPA's "substantial burden" should "be interpreted by reference to Supreme Court jurisprudence." See 146 Cong. Rec. S7776 (July 27, 2000). The Supreme Court has found that a substantial burden occurs when a state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or when a person is required to "choose between following the precepts of her religious and forfeiting the benefits, on the one hand, and abandoning

---

[2]Other courts of appeals addressing this issue have come to mixed results. See Adkins v. Kaspar, 393 F.3d 559, 568 (5th Cir. 2004) (a substantial burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs"); Civil Liberties For Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) (a substantial burden is one "that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable"); San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) (a substantial burden imposes "a significantly great restriction or onus upon such exercise"); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (a substantial burden is one that results from pressure that "forces adherents to forgo religious precepts or from pressure that mandates religious conduct").

the precepts of her religion . . . on the other." Sherbert v. Verner, 374 U.S. 398, 404 (1963). However, "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not fall within these parameters. Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988).

Based on Supreme Court precedent, decisions from other circuits, RLUIPA's legislative history, the plain wording of the statute, and considering Congress' intent to afford a wider array of religious practices the benefit of greater protection, see 42 U.S.C.2000cc-5(7), the Court finds that a "substantial burden" on religious exercise occurs, in the context of RLUIPA, when an individual is forced to significantly modify his or her religious behavior and violate his or her religious beliefs. See Thomas, 450 U.S. at 718; Spratt, 2005 WL 3434739 at *4.  Restrictions or regulations that impose mere inconveniences or have an incidental effect upon an individual's religious exercise will not be deemed substantial. Lyng, 485 U.S. at 450-51.

Upon review of Plaintiff's *pro se* complaint, the Court finds that Plaintiff has alleged a substantial burden on the exercise of his religion resulting from the 1999 change in DOC policy and, therefore, the complaint states a claim under RLUIPA.  In his "Sworn Affidavit" attached to the complaint, Plaintiff states that he is "a sincere adherent to the religion of Islam."  (Dkt. # 1, attachment).  He also states that "the use of religious oils was an important part of my Muslim faith" and that officials at Dick Conner Correctional Center ("DCCC") "refused to all Muslim religious oils to be either received or delivered" thereby restricting use of the oils during his five daily prayers as prescribed by his religious beliefs.  (Id. at 2). Plaintiff further explains that "Islamic oils are essential to the practice of our religion ... When a Muslim prepares for his 5 daily prayers all

Muslims must wash themselves and apply to himself perfume or oils. That is a essential requirement of our religion. To deny us the purchase of religious oils is a direct infringement upon our religious practice." (Id., attached Grievance dated 9-27-99). According to Plaintiff, Muslim inmates in DOC custody had been allowed to possess the oils "for a long period of time without a problem." (Id., attached Response to Grievance No. DCCC-99-110, back side). Then, on or about May 5, 1999, Plaintiff claims that "Defendant issued his order for total ban on prayer oils at the Oklahoma Department of Corrections facilities." (Id., attached "Continued Supporting Facts"). Plaintiff further alleges that the DCCC Chaplain told the property room supervisor that "since the religious oils where (sic) not on the property matrix that he needed to stop the income of religious oils. As of 9-24-99 they have stoped (sic) the Muslim & inmates from purchasing or receiving religious oils." (Id., attached Grievance dated 9-27-99). Thus, the allegations in the complaint indicate that restrictions imposed by DOC's 1999 policy and implemented at DCCC caused Plaintiff to forego the use of prayer oils during his daily prayers, thereby significantly modifying his religious behavior and violating his beliefs by affecting his daily prayers. Accordingly, the Court finds that Plaintiff's *pro se* complaint demonstrates a "substantial burden" on his "religious exercise" within the meaning of RLUIPA.

Having determined that Plaintiff has sustained his burden under RLUIPA, the focus shifts to Defendant to counter Plaintiff's claim. Defendant shall file a response to this Order, setting forth any available defense to Plaintiff's claim under RLUIPA. Defendant shall provide, *inter alia*, any evidence demonstrating that the restrictions on Plaintiff's access to prayer oils were in furtherance of a compelling interest and that the restrictions were of the least restrictive means. See 42 U.S.C. § 2000cc-1(a)(1) and (2). Plaintiff may file a reply to Defendant's response.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendant's motion to substitute party (Dkt. # 62) is **granted**. Justin Jones, Director of the Oklahoma Department of Corrections, is **substituted** as Defendant in place of James Saffle, former Director.

2. Plaintiff's *pro se* complaint (Dkt. # 1) demonstrates a "substantial burden" on his "religious exercise" within the meaning of RLUIPA.

3. Within thirty (30) days of the entry of this Order, Defendant shall file a response to the Complaint (Dkt. # 1), setting forth any available defense to Plaintiff's claim under RLUIPA.

4. Plaintiff may file a reply to Defendant's response within thirty (30) of the filing of the response.

**IT IS SO ORDERED** this 14th day of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT