IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYRONE R. HAMMONS, individually and on behalf of those similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>JUSTIN JONES, Director of Oklahoma Department of Corrections and or successors,<br><br>          Defendant. | Case No. 00-CV-143-GKF-SAJ |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action commenced by plaintiff Tyrone R. Hammons ("Hammons"), a state prisoner. Hammons filed this action *pro se* but is currently represented by counsel. By Order filed November 13, 2003 (Dkt. # 52, <u>Hammons v. Saffle</u>, 348 F.3d 1250 (10th Cir. 2003)), the Tenth Circuit affirmed this Court's Order granting summary judgment to defendant Director of the Oklahoma Department of Corrections ("DOC") on the First Amendment and qualified immunity issues. However, the Tenth Circuit remanded the case to this Court for consideration of a claim first raised by Hammons on appeal, whether Hammons had stated a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Presently before the Court is Hammons' motion for summary judgment. For the reasons discussed below, the Court finds that DOC's policy of forbidding Hammons' in-cell possession of prayer oils does not violate Hammons' rights under RLUIPA because (1) DOC has demonstrated that the compelling state interest in maintaining security and order in a hostile penal system outweighs Hammons' interest in having the prayer oils in his cell, and (2) reasonably limiting access to prayer

oils stored at a religious facility is the least restrictive means of furthering the states's compelling interest. Based on that finding, the Court concludes that summary judgment should be rendered in favor of DOC, the non-moving party. Hammons' motion for summary judgment should be denied.

## *BACKGROUND*

As determined by the Tenth Circuit on appeal, see Hammons v. Saffle, 348 F.3d at 1253, Hammons is a devout Muslim who abides by the tenets of Islam that purport to advise followers to use Muslim prayer oils to enhance the spiritual value of their five daily prayers. Prior to 1999, Hammons was allowed to purchase prayer oils, subject to limitations, and was allowed to possess and use them in his cell. In 1999, DOC enacted a new policy banning in-cell possession of prayer oils because DOC officials had determined that scented oils could be used to mask the scent of drugs from dogs used to locate contraband. Although Muslim inmates could access the prayer oils through volunteer chaplains under the 1999 policy, the oils could not be accessed for each of the five daily prayers. Hammons filed this action in February, 2000, alleging that the policy changes violated his rights under the First Amendment and the Religious Freedom Restoration Act ("RFRA").

At the time of the 1999 policy change, imitation designer colognes and oils remained available at prison canteens for purchase by the general inmate population. In 2001, a DOC committee recommended that all imitation designer colognes and oils no longer be sold at facility canteens because they masked the scent of drugs and interfered with the drug dogs' ability to detect drugs. Based on the committee's recommendation, a new policy was enacted in June, 2002, restricting the sale of both Muslim prayer oils and imitation designer colognes and perfumes in the prison canteens. In addition, inmates were no longer allowed to possess these substances in their cells. Under current DOC policy, OP-030112, effective April 19, 2006, Hammons is allowed to

purchase prayer oils from an approved vendor as long as the oils are stored and used in designated worship areas. Hammons is not allowed to possess prayer oils in his cell. This policy does not allow Hammons access to prayer oils for each of his five daily prayers.

On November 30, 2001, this Court granted DOC's motion for summary judgment on Hammons' First Amendment and RFRA claims. See Dkt. # 30. On appeal, the Tenth Circuit affirmed those rulings but remanded the case for this Court to consider whether Hammons stated a claim under RLUIPA. See Dkt. # 52. By Order filed February 14, 2006 (Dkt. # 76), this Court determined that Hammons had stated a claim under RLUIPA. The Court directed DOC to file a response to the complaint, setting forth any available defense to Hammons' claim under RLUIPA. Also on February 14, 2006, Hammons filed a motion for summary judgment (Dkt. # 75). On April 7, 2006, DOC filed a combined response to Hammons' motion for summary judgment and to Hammons' complaint (Dkt. # 83), along with supporting exhibits (Dkt. # 84). Hammons filed a reply (Dkt. # 88).

## *ANALYSIS*

### *A. Summary Judgment*

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex,

477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In addition, "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under rule 56." Dickeson v. Quarberg, 844 F.2d 1435, 1444 n. 8 (10th Cir. 1988) (quoting 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure: Civil 2d § 2720*); see also Faustin v. City and County of Denver, Colo., 423 F.3d 1192, 1198-99 (10th Cir. 2005). Entry of summary judgment in favor of the non-movant is appropriate if the Court can determine that the non-moving party is entitled to a judgment as a matter of law and if there is no procedural prejudice to the moving party. No procedural prejudice results if the court finds that the parties had the opportunity to present and did present all of the applicable facts concerning the parameters of their positions. Dickeson, 844 F.2d at 1444 n.8.

*B. Claim under the RLUIPA*

Under section 3 of RLUIPA, a prison is forbidden from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless [it] demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise to "include[ ] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Section 3 of RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005) (holding that section 3 of RLUIPA did not violate the Establishment Clause). The RLUIPA creates a higher standard of review for free exercise claims than that applicable to constitutional free exercise claims. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 986 (8th Cir. 2004). "Requiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." City of Boerne v. Flores, 521 U.S. 507, 534 (1997). Therefore the strict level of scrutiny of the RLUIPA affords inmates more protection against religious infringement by correctional facilities' regulations than the rational basis analysis under the First Amendment. Compare id. (discussing stringent test demanded under RFRA) *with* O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (applying "reasonableness" test under the First Amendment).

As stated above, the Court has previously ruled that in this case Hammons has satisfied his initial burden of demonstrating that the prohibited activity is a religious exercise and that the DOC substantially burdened that exercise. See Dkt. # 76. Having determined that Hammons had sustained

5

his burden under RLUIPA, the Court directed DOC to provide any evidence demonstrating that the restrictions on Hammons' access to prayer oils were in furtherance of a compelling interest and that the restrictions were of the least restrictive means. See id.; 42 U.S.C. § 2000cc-1(a)(1) and (2).

### C. *The DOC has demonstrated that its policy banning in-cell possession of prayer oils is the least restrictive means of furthering its compelling interest in maintaining security and order*

#### *1. Compelling governmental interest in maintaining security and order*

On April 7, 2006, DOC filed a combined response to the Court's Order and to Hammons' motion for summary judgment. See Dkt. # 83. The policy at issue in this case bans in-cell possession of prayer oils but allows an inmate to purchase prayer oils from an approved vendor and store the oils at the facility chapel where they may be accessed for prayers. The DOC asserts that its policy banning the in-cell possession of scented prayer oils is supported by its compelling governmental interest of maintaining security and order in a hostile penal system. In support of that position, DOC has provided, *inter alia*, the affidavit of Ken Klingler, the Deputy Director of Institutions. Mr. Klingler has more than twenty (20) years experience as an employee of the DOC and has previously served as Assistant Regional Director, Warden, Deputy Warden, Assistant District Supervisor, Probation and Parole Team Supervisor, Administrative Officer, and Case Manager. See Dkt. # 83 at 11. Mr. Klingler states that the scented oils and colognes can be used by inmates to (1) mask the scent of drugs to prevent detection by drug dogs, (2) serve as personal lubricants for illicit sexual activity, (3) thwart attempts by correctional officers to enter cells and restrain inmates, and (4) barter with other inmates who are unable to obtain the oils and colognes. See Dkt. # 84, Ex. 8 at ¶ 3. Thus, the DOC argues that its policy restricting access to prayer oils serves to promote compelling governmental interests of preventing the use and possession of illegal drugs, maintaining prison

6

order and safety, and deterring crime within DOC facilities.[1] See id. The Court is required to accord deference to the views of prison administrators and officials regarding RLUIPA issues. Hoevenaar v. Lazaroff, 422 F.3d 366, 371 (6th Cir. 2005) (reversing district court's granting of summary judgment in favor of plaintiff based on lower court's failure to give proper deference to the prison officials' testimony concerning security risks associated with allowing plaintiff to grow a kouplock); Odneal v. Dretke, 435 F.Supp.2d 608, 620 (S.D. Tex. 2006) ("Prison security, in and of itself, is a compelling state interest, and deference is due to institutional officials' expertise in this area.").

In response to the DOC's arguments, Hammons asserts that DOC's citation to security concerns as a "compelling interest" is conclusory. The Court disagrees. DOC has pointed to four (4) specific security concerns directly related to allowing Hammons to possess his prayer oils in his cell. The concerns cited by DOC directly relate to the special characteristics of the oils: they are scented and can be used to mask the scent of contraband; they are lubricants and can be used in prohibited sex acts and to avoid or escape restraints. Those characteristics make the oils valuable to the general inmate population. Because they have value separate from their religious value,[2] they give rise to the security concerns outlined by the DOC.

Hammons also argues that DOC's interests are less than compelling as evidenced by both "the gaping underinclusivity of DOC's prelitigation ban of prayer oils but not more strongly scented

---

[1]Mr. Klingler notes his belief that DOC is obligated under the Prison Rape Elimination Act, 42 U.S.C. § 15601, et seq., effective September 4, 2003, to take steps to prevent prison rape and that one way of accomplishing that goal is to prohibit in-cell possession of oils.

[2]The fact that the oils have value separate from their religious value distinguishes the oils from other religious objects, such as religious headgear, prayer rugs, or prayer shawls, which inmates are allowed to keep in their cells. See Dkt. # 84, Ex. 4, OP-030112.

7

non-religious perfumes and colognes," and the failure of DOC to identify the remaining interests until "nearly seven years after the ban." See Dkt. # 88 at 5-6. As noted by the Tenth Circuit in affirming this Court's rejection of Hammons' First Amendment claim, however, where the final policy is not "under-inclusive," as in the instant case, prison officials may not be faulted for experimenting with solutions and may "address problems one step at a time." Hammons v. Saffle, 348 F.3d at 1255 (10th Cir. 2003) (citing City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 52-53 (1986)).

Hammons further argues that the compelling interest test requires the government to demonstrate a "paramount interest in applying a law *to the particular person* whose religious exercise would be substantially burdened by the application." See Dkt. # 88 at 4-5. Hammons relies on Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal, 546 U.S. 418 (2006), in support of his argument. Hammons also claims that DOC has failed to present a realistic danger that he may divert prayer oils to illicit uses and, as a result, the governmental interest in applying the ban to him can only be deemed speculative or exaggerated. Again, the Court respectfully rejects Hammons' assessment of DOC's evidence. While nothing in the record suggests that Hammons has in the past used his prayer oils to conceal the scent of drugs from drug dogs, the DOC cites to Hammons' history of drug use during his incarceration in support of the policy. See Dkt. # 83 at 8. Hammons' Consolidated Record Card ("CRC"), see Dkt. # 83, Ex. 10, reflects that during his current incarceration, Hammons has failed four drug tests. The DOC has provided evidence that Hammons has used and/or possessed drugs and other intoxicating substances in prison as early as 1982 and as recently as 2004. Hammons has also received a prison misconduct for bartering. See id. The Court concludes that DOC has demonstrated the existence of a compelling interest in applying the prayer

oils restriction to Hammons.

>   2.   *Storage and use of prayer oils in religious facilities is least restrictive alternative to allowing in-cell possession*

The DOC asserts that its policy permitting inmates to use prayer oils purchased from approved vendors in its religious facilities provides the least restrictive alternative to allowing inmates to possess the oils in their cells. According to the affidavit of Ken Klingler, see Dkt. # 84, Ex. 8, if Muslim inmates like Hammons were allowed to maintain even a small amount of prayer oil in their cells, it would be difficult, if not impossible, to monitor the oil to insure that it would not be used as barter and acquired by unauthorized inmates for one of the illicit uses previously listed. Mr. Klingler states that in-cell possession would lead to dangerous jealousies, bartering and increased violence and that increased staffing and administrative burdens would result. Id.

In response, Hammons argues that RLUIPA requires prisons to accommodate each inmate's religious exercise to the greatest extent possible consistent with compelling state interest, "not that courts 'guarantee' prisons against all possible security risks, however marginal or imagined." (Dkt. # 88 at 7). As a result, Hammons argues that the DOC's "bare assertion" that accommodating prisoners' religious practice would impose unquantified costs and administrative burdens cannot defeat his claim under RLUIPA. Id. Although Hammons correctly states the prison's responsibility under RLUIPA, the Court finds that the DOC has done more than make a "bare assertion" concerning the costs and burdens associated with accommodating Hammons' religious exercise. DOC does not quantify the projected staffing and administrative costs in terms of dollars and cents. DOC nonetheless links the increased staffing and administrative burden attributable to accommodation of Hammons' religious exercise by allowing in-cell possession of any amount of prayer oil to the security risks discussed above.

Hammons suggests that a less restrictive alternative would be for DOC employees to distribute 0.167 ounces of prayer oil per day[3] to accommodate his 5 daily prayers. Hammons asserts that the DOC has failed to present any evidence that that amount of oil would suffice to mask the scent of illegal drugs. Hammons' argument, however, fails to address the monitoring issues associated with allowing him to possess any amount of the oils in his cell as identified by DOC. Although Hammons acknowledges that his proposed accommodation "might not completely eliminate every security risk that DOC might imagine," he fails to address DOC's expressed concern that even small amounts of the oils could be bartered and amassed for the illicit uses identified by DOC. Hammons relies on Agrawal v. Briley, 2004 WL 1977581 (N.D. Ill. 2004) (considering claims of religious dietary needs), Warsoldier v. Woodford, 418 F.3d 989, 1000 (9th Cir. 2005) (considering application of a grooming policy limiting hair length to religious exercise of Native American inmate), and Charles v. Verhagen, 220 F.Supp.2d 937, 951 (W.D. Wis. 2002) (requiring prison officials to allow in-cell possession of religious items including prayer oils), to support his position. In those cases, the prison systems were ordered to accommodate the inmates' religious beliefs, whether involving possessing prayer oils in cells, Charles, 220 F.Supp.2d at 951, or receiving specially prepared religious diets, Agrawal, 2004 WL 1977581 at *10. Hammons argues that the concerns faced at the prisons in those cases are indistinguishable from those concerns faced in Oklahoma. The Court finds, however, that the cases cited by Hammons are distinguishable from the instant case. In Charles, 220 F.Supp.2d at 949, the defendant prison officials asserted only a compelling interest in controlling prison administrative costs and did not identify any specific

---

[3]Hammons arrives at the minimum daily allotment of prayer oils by dividing 5 ounces, the amount of prayer oil allowed per month under the DOC policy in effect prior to the prayer-oil ban, by 30 days to yield 0.167 ounces per day.

security concerns related to the prayer oils. As a result, the Charles Court found that because the prison officials based their defense on administrative cost concerns and generalized security concerns rather than identifying specific problems associated with prayer oils, the prison officials had failed to demonstrate that banning in-cell possession of prayer oils was the least restrictive means of furthering their interest in controlling prison administrative costs associated with inmate property. See id. In contrast, the DOC in the instant case has identified the four specific security concerns related to prayer oils as discussed above. It is true that in general other prison systems "have the same interest in maintaining prison security, ensuring public safety and protecting inmate health," as argued by Hammons. Yet the cases relied on by Hammons either did not involve the same interests at issue in this case, or the prison officials failed to identify security, health, and safety concerns specific to prayer oils.

Upon review of the record developed in this matter, the Court finds that the parties had an opportunity to present and did present all of the applicable facts concerning the parameters of their positions on the validity of DOC's policy under the RLUIPA. Given the state's compelling interests discussed above, the Court finds that DOC's policy of restricting Hammons' access to prayer oils to the oils stored at the religious facility represents the least restrictive alternative to allowing Hammons to possess the oils in his cell. The Court shall grant summary judgment in favor of DOC.

## *CONCLUSION*

DOC's policy of forbidding Hammons' in-cell possession of prayer oils does not violate Hammons' rights under RLUIPA because DOC has demonstrated that the compelling state interest in maintaining security and order in a hostile penal system outweighs Hammons' interest in having the prayer oils in his cell and that limiting access to the prayers oils to that stored in the chapel or

other religious facility is the least restrictive means of furthering the state's interests. Based on the record developed by the parties after full opportunity to explore the scope of their positions, the Court concludes that entry of summary judgment in favor of the DOC is appropriate. Plaintiff's motion for summary judgment shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Hammons' motion for summary judgment (Dkt. # 75) is **denied**.

2. DOC is **granted** summary judgment on Hammons' claim under RLUIPA.

3. A separate judgment in favor of the DOC shall be entered in this matter contemporaneously herewith.

DATED THIS 27th day of July, 2007.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma